IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| GENIFUEL CORPORATION, *et al.*,<br><br>Plaintiffs,<br><br><br><br><br>vs.<br><br><br>GEORGE OYLER,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br><br><br><br><br>Case No. 2:11-CV-838 TS |

This matter is before the Court on Defendant's Motion to Dismiss.[1]  For the reasons set forth below, the Court will grant the Motion for lack of subject matter jurisdiction.

I. BACKGROUND

This case arises out of a dispute between two brothers.  Prior to 2008, Plaintiff James Oyler ("James") and Defendant George Oyler ("George") were engaged in collaborative biofuel research, which yielded a significant amount of intellectual property rights for James and his company, Plaintiff Genifuel Corporation.  In February of 2008, George and James entered into an Assignment of Membership Interest (the "Assignment") wherein George assigned all of his rights in this intellectual property to James.  At issue in this case are two patents (the "Issued Patents")—U.S. Pat. Nos. 7,905,930 and 7,977,076—that were issued based upon intellectual

_____

[1] Docket No. 7.

property encompassed by the Assignment.  Although George and James were listed as co-inventors on the Provisional Applications, James is listed as a sole inventor on the resulting Utility Applications and Issued Patents.  Despite assigning all of his rights in the patents, George contends that he should be listed as co-inventor on the Utility Applications and Issued Patents. In response to George's public and private statements to this effect, James filed this suit seeking (1) declaratory judgment confirming his sole inventorship of the Issued Patents, or alternatively (2) a correction of inventorship pursuant to 35 U.S.C. § 256, should the Court find that George is a co-inventor of the Issued Patents.

## II. MOTION TO DISMISS

Defendant filed a Motion to Dismiss.  Defendant argues that "this Court lacks subject matter jurisdiction over this dispute and personal jurisdiction over George."[2]  Specifically, Defendant argues that the covenant not to sue contained in the Assignment divests this Court of subject matter jurisdiction.  Defendant also asserts that he is not subject to personal jurisdiction. The Court agrees that subject matter jurisdiction over this dispute is improper, so the issue of personal jurisdiction need not be reached.

A.      STANDARD OF REVIEW

"Subject matter jurisdiction in a declaratory judgment suit depends on the existence of 'a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment,' and the plaintiff bears the burden of proving the existence of such a controversy throughout the litigation."[3]

---

[2] *Id.* at 1.

[3] *Dow Jones & Co., Inc. v. Ablaise Ltd.*, 606 F.3d 1338, 1345 (Fed. Cir. 2010) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

B.      SUBJECT MATTER JURISDICTION ANALYSIS

James is currently listed as the sole inventor on the Issued Patents.  James requests (1) declaratory judgment verifying his sole inventorship of the Issued Patents, or alternatively, (2) a correction of inventorship pursuant to 35 U.S.C. § 256, should this Court determine that George is a co-inventor of said patents.  The Federal Circuit has explained that "requests for declaratory relief relating to inventorship [are] functional equivalents of actions formally brought pursuant to § 256."[4]  Therefore, the jurisdictional analysis for both requests is identical.

As a threshold matter, the Court must determine whether the Assignment constitutes a covenant not to sue that divests the Court of jurisdiction over this dispute.  The Federal Circuit has held "that a covenant not to sue for patent infringement divests the trial court of subject matter jurisdiction over claims that the patent is invalid, because the covenant eliminates any case or controversy between the parties."[5]

Plaintiffs assert that the Federal Circuit has only recognized divestiture of jurisdiction based upon a covenant not to sue in infringement cases.  While it is true that the Federal Circuit cases cited by Defendant involve infringement claims,[6] this fact is not critical to the Court's

---

[4] *Larson v. Correct Craft, Inc.*, 569 F.3d 1319, 1325 (Fed. Cir. 2009).

[5] *Dow Jones*, 606 F.3d at 1346 ("[C]ovenant not to sue avowed that [patentee defendant] would not sue [non-patentee plaintiff] for any acts of infringement of [the disputed] patent.  The covenant therefore extinguished any current or future case or controversy between the parties, and divested the district court of subject matter jurisdiction."); *see also Benitec Austl., Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340 (Fed. Cir. 2007) (holding covenant not to sue divests trial court of subject matter jurisdiction).

[6] *E.g.*, *King Pharmas. Inc. v. Eon Labs, Inc.*, 616 F.3d 1267 (Fed. Cir. 2010); *Dow Jones*, 606 F.3d at 1344; *Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995).

analysis.  In fact, the Federal Circuit has also held that covenants not to sue bar suits that bring claims of invalidity and unenforceability.[7]

The Federal Circuit has explained that "whether a covenant not to sue will divest the trial court of jurisdiction depends on what is covered by the covenant."[8]  Therefore, the Court must look to the Agreement to determine whether jurisdiction over this claim has been divested.  On February 5, 2008, George executed the Assignment with James, which contains a covenant not to sue.  Article II of the Assignment states,

> [George] hereby assigns to [James] any and all rights that he . . . ha[s] in any of the stock and assets of Genifuel and the Genifuel entities, which would include, but is not limited to, any and all contracts, claims and entitlements of Genifuel, the Genifuel Entities and the Genifuel IP . . . and releases any right, title and interest he . . . may have in the Genifuel IP. . . . [George] agrees that he . . . will not, directly or indirectly, establish or be a party to any interference, re-examination or other proceedings challenging the validity of the Genifuel IP, any application(s) claiming priority thereto and any Letters Patent issuing therefrom.[9]

The plain language of the Assignment restricts George from direct or indirect involvement as a party to any proceeding challenging the validity of the Issued Patents.

At oral argument, counsel for Plaintiffs argued that the Assignment did not bar this action because the Assignment only relates to challenges of the Issued Patents' validity and challenges to their inventorship do not necessarily result in invalidity.  In support, counsel cites to 35 U.S.C. § 256, which states:

> Whenever through error a person is named in an issued patent as the inventor, or through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on

---

[7] *See, e.g.*, *Super Sack*, 57 F.3d at 1058 ("[A] patentee defending against an action for declaratory judgment of *invalidity* can divest the trial court of jurisdiction . . . by filing [a covenant not to sue].").

[8] *Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1297 (Fed. Cir. 2009).

[9] Docket No. 8-2, at 5 § 2.1(b).

application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a certificate correcting such error.

       The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.[10]

This Court finds the Federal Circuit's discussion of a similar issue in *Pannu v. Iolab Corp.*[11] to be instructive.  In that case, the court stated, as it had earlier, that 35 U.S.C. § 102(f) "mandates that a patent accurately list the correct inventors of a claimed invention."[12]  Thus, "if nonjoinder of an actual inventor is proved by clear and convincing evidence, a patent is rendered invalid."[13]  This result, however, "is ameliorated by section 256."[14]  Section 256 "is a savings provision."[15]  Under this provision, "[i]f a patentee demonstrates that inventorship can be corrected as provided for in section 256, a district court must order correction of the patent, thus saving it from being rendered invalid."[16]

The Federal Circuit explained the proper procedure as follows:

When a party asserts invalidity under § 102(f) due to nonjoinder, a district court should first determine whether there exists clear and convincing proof that the alleged unnamed inventor was in fact a co-inventor.  Upon such a finding of incorrect inventorship, a patentee may invoke section 256 to save the patent from

---

[10] 35 U.S.C. § 256 (2006).

[11] 155 F.3d 1344 (Fed. Cir. 1998).

[12] *Id.* at 1349.

[13] *Id.* (citation omitted); *see also id.* at 1349-50 ("[S]ection 102(f) still makes the naming of the correct inventor or inventors a condition of patentability; failure to name them renders a patent invalid.").

[14] *Id.* at 1350.

[15] *Id.*

[16] *Id.*

invalidity.  Accordingly, the patentee must then be given an opportunity to correct inventorship pursuant to that section.  Nonjoinder may be corrected "on notice and hearing of all parties concerned" and upon a showing that the error occurred without any deceptive intent on the part of the unnamed inventor.[17]

The Federal Circuit made clear, however, that

> a patent with improper inventorship does not avoid invalidation simply because it *might* be corrected under section 256.  Rather, the patentee must claim entitlement to relief under the statute and the court must give the patentee an opportunity to correct the inventorship.  If the inventorship is successfully corrected, section 102(f) will not render the patent invalid.  On the other hand, if the patentee does not claim relief under the statute and a party asserting invalidity proves incorrect inventorship, the court should hold the patent invalid for failure to comply with section 102(f).[18]

Based on the Federal Circuit's guidance in *Pannu*, a district court faced with a correction of inventorship issue proceeds as follows.  The court must first assess whether the alleged unnamed inventor is in fact a co-inventor.  If this is the case, the patent is at risk of being rendered invalid.  The validity of the patent can be saved, however, if the requirements of § 256 are met—namely that notice and a hearing are provided, and a showing that the error occurred without any deceptive intent.  If the requirements of § 256 are met, the court would order the correction of inventorship and the patent would be saved from invalidity.  However, if § 256's requirements are not met, the patent is invalid.

Plaintiffs' argument is, essentially, that a patent need not be declared invalid when inventorship is at issue.  This is correct.  As set forth above, § 256 provides a method to salvage a patent from invalidity when certain conditions are met.  Plaintiffs contend that because the Assignment speaks of "validity" challenges, the covenant contained therein does not bar this action because the patents at issue might ultimately be declared valid.

---

[17] *Id.*

[18] *Id.* at 1350-51.

This argument, however, puts the cart before the horse.  Such an argument would make this Court's jurisdiction dependent on whatever the ultimate outcome may be.  Thus, under Plaintiffs' argument, the Court could assert jurisdiction, only to later determine that the requirements of § 256 were not met, rendering the patent invalid and thus divesting the Court of jurisdiction.  This argument simply stretches logic too far and only proves the point that even under § 256 the validity of the patent remains at issue.

Again the Court must turn back to the language of the Assignment.  That language prevents Defendant from directly or indirectly bringing or being a party to any proceeding challenging the validity of the Genifuel IP.  The case before the Court certainly brings the validity of the patents at issue into question.  While Plaintiffs are correct that in such a proceeding the patents might ultimately be determined to be valid, the fact remains that there is potential for the Court to declare the patents invalid.  As such, under the Assignment, Defendant cannot be a party to such a proceeding and the Court is without jurisdiction to hear it.

Based on the foregoing, this Court is without subject matter jurisdiction over this dispute because the covenant not to sue in the Assignment divested this Court's jurisdiction over proceedings challenging the validity of the Issued Patents, to which George is a party.  Because the Court concludes that it does not have subject matter jurisdiction over this dispute, it is not necessary to reach the issue of personal jurisdiction.  The Court will therefore grant Defendant's Motion to Dismiss.

## IV. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendant's Motion to Dismiss (Docket No. 7) is GRANTED.  The Clerk of the Court is directed to close this case forthwith.

7

DATED   March 27, 2012.

BY THE COURT:

_____

TED STEWART
United States District Judge